UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

PYARJANG KC,

        Petitioner,

TIMOTHY DUCOTE, Warden of Jackson Parish
Correctional Center; BRIAN ACUNA, New Orleans
Field Office Acting Director, U.S. Immigration &
Customs Enforcement; TODD M. LYONS, Director,
United States Immigration and Customs
Enforcement; MARKWAYNE MULLIN, Secretary,
U.S. Department of Homeland Security; TODD
BLANCHE, U.S. Attorney General, *in their official
capacities*.

        Respondents.

Case No.

**<u>VERIFIED PETITION FOR WRIT OF HABEAS CORPUS
PURSUANT TO U.S.C. § 2241</u>**

## **INTRODUCTION**

1. This case arises from the prolonged detention of Petitioner, who has been detained nearly eight months after being granted withholding of removal, in violation of 8 U.S.C. § 1231 and 8 C.F.R. § 241.4, which require the government to provide an individualized custody review to determine whether continued detention is justified or whether supervised release is warranted.

2. Petitioner has remained continuously detained since his entry into the United States on October 23, 2024, and has now been in custody for a total of one year and six months without being afforded the process required by law.

3. Petitioner's detention stems from his flight from Nepal after suffering repeated attacks and threats by members of the Maoist party on account of his political activities with the Nepali Congress Party. (Exhibit A: Petitioner's Statement in Support of Asylum Form I-589). After three separate incidents of violence and threats in March, April, and June 2024—two of which required hospital treatment—and after the police refused to accept his complaint, Petitioner fled Nepal on July 19, 2024. (Id.). He entered the United States on October 23, 2024, where he was initially processed for expedited removal but was found to have a credible fear of persecution following an interview with an asylum officer. ((Exhibit B: Form I-589; Exhibit C: Notice to Appear). The expedited removal order was vacated, and removal proceedings were initiated. (Exhibit C: Notice to Appear).

4. On June 10, 2025, Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture. (Exhibit B: Form I-589). On August 15, 2025, the Immigration Judge granted withholding of removal but denied asylum, rendering Petitioner subject to a final order of removal while prohibiting his removal to Nepal. (Exhibit D: IJ

Order). From that point forward, Petitioner's detention became governed by the post-removal-order detention statute, 8 U.S.C. § 1231.

5. Despite the passage of well over the 90-day removal period—and now nearly eight months since the grant of withholding—Petitioner remains detained without having received the individualized custody review required under 8 C.F.R. § 241.4. Instead, when Petitioner affirmatively sought review by filing a motion for bond redetermination on April 1, 2026, the Immigration Judge denied the request for lack of jurisdiction on April 7, 2026, leaving Petitioner without any meaningful process to challenge his continued detention. (Exhibit E: Bond Redetermination Request; Exhibit F: IJ Bond Decision).

6. Petitioner is currently detained at the Jackson Parish Correctional Center in Jonesboro, Louisiana. (Exhibit G: ICE Detainee Locator). His continued detention—without the procedural protections mandated by statute, regulation, and the Constitution—forms the basis of this petition.

7. Petitioner's continued detention violates the Due Process Clause because it has become unreasonably prolonged under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Post-removal-order detention is limited to a period reasonably necessary to effectuate removal, and detention beyond six months is presumptively unreasonable where there is no significant likelihood of removal in the reasonably foreseeable future.

8. Petitioner's right to procedural due process under *Mathews v. Eldridge*, 424 U.S. 319 (1976) requires an individualized custody determination where the government bears the burden of proving, by clear and convincing evidence, that Petitioner poses a danger to the community or a flight risk. See *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697, 712 (W.D. Tex. 2025).

9.  Pursuant to 8 U.S.C. § 1231(a)(2)(C) and 8 C.F.R. § 241.4, Petitioner must be considered for supervision under regulations prescribed by the Attorney General.

## JURISDICTION

8.  This action arises under the Constitution of the United States and the Immigration and Nationality Act, 8 U.S.C. § 1101 et seq.

9.  This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus); 28 U.S.C. § 1331 (federal question); and Article I, section 9, clause 2 of the United States Constitution (the Suspension Clause).

10. This Court may grant relief pursuant to 28 U.S.C. § 2241, et seq., the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

## VENUE

11. Venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391(b) as Petitioner is detained in Jonesboro, Louisiana and his immediate physical custodian is located within this District. *Rumsfield v. Padilla,* 542 U.S. 426, 443 (2004); *see also United States v. Scott,* 803 F.2d 1095, 1096 (10th Cir. 1986) ("A § 2241 petition for writ of habeas corpus must be addressed to the federal district court in the district where the prisoner is confined.").

12. Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because Respondents are employees, officers, and agencies of the United States, and because a substantial part of the events or omissions giving rise to the claims and relevant facts occurred in this District.

## REQUIREMENTS OF 28 U.S.C. §§ 2241, 2243

13. The Court must grant the petition for writ of habeas corpus or order Respondents to

show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, the Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

14. Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

15. Petitioner is "in custody" for the purpose of § 2241 because he is detained by Respondents in an immigration detention facility in Jonesboro, Louisiana. Petitioner is under the direct control of Respondents and their agents.

## PARTIES

16. Petitioner, PYARJANG KC, is a citizen of Nepal who was granted withholding of removal 8 months ago, but continues to be detained by Immigration and Customs Enforcement officials without being afforded the statutory procedures in 8 U.S.C. § 1231 and 8 C.F.R. § 241.4.

17. Respondent, TIMOTHY DUCOTE, is the warden of Jackson Parish Correctional Center where Petitioner is currently detained. He is the legal custodian of Petitioner.

18. Respondent BRIAN ACUNA, is the Field Office Director of the New Orleans Field Office, U.S. Immigration & Customs Enforcement ("ICE") Enforcement and

Removal Operations division. As a Field Office Director, Respondent oversees ICE's enforcement and removal operations in Jonesboro, Louisiana. As such, Respondent is Petitioner's immediate custodian and is responsible for Petitioner's detention and removal. He is named in his official capacity.

19. Respondent, TODD LYONS, is the Director of U.S. Immigration and Customs Enforcement. As the Director, Respondent Lyons oversees ICE's enforcement and removal operations throughout the United States, including Petitioner's detention.

20. Respondent, MARKWAYNE MULLIN, is the Secretary of the Department of Homeland Security ("DHS"). He is responsible for the implementation and enforcement of the Immigration and Nationality Act ("INA") and oversees ICE, which is responsible for Petitioner's detention. Mr. Mullin has ultimate custodial authority over Petitioner and is named herein in his official capacity.

21. Respondent, TODD BLANCHE, is the Attorney General of the United States. He is responsible for the Department of Justice, of which the Executive Office for Immigration Review ("EOIR") and the immigration system it operates is a component agency. He is sued in his official capacity.

## FACTS

22. Petitioner fled his native Nepal after suffering attacks and threats to his life by members of the Maoist party based on his membership in the Nepali Congress Party ("NCP"). (Exhibit A: Petitioner's Statement in Support of Form I-589). Petitioner explained that he was an active supporter of the NCP and helped organize rallies. As a result of this activity, members of the Maoist party threatened him and urged him to join their party. (Exhibit A: Petitioner's Statement in Support of Form I-589).

23. Petitioner experienced three incidents—on March 7, 2024, April 1, 2024, and June 14, 2024—during which he was attacked or threatened by members of the Maoist party, resulting in two instances of hospital treatment. (Exhibit A: Petitioner's Statement in Support of Form I-589). Petitioner reported these incidents to the police with his father, but the police refused to take a complaint against the Maoist party and turned them away. (Exhibit A: Petitioner's Statement in Support of Form I-589).

24. Petitioner fled Nepal on July 19, 2024, and traveled to the United States. (Exhibit A: Petitioner's Statement in Support of Form I-589). On October 23, 2024, Petitioner entered the United States and was encountered by U.S. Department of Homeland Security Customs and Border Protection personnel, who processed him for expedited removal under section 235(b)(1). However, he was referred for a credible fear interview with an asylum officer and was found to have a credible fear of persecution in Nepal. (Exhibit C: Notice to Appear). As a result of the positive credible fear determination, the expedited removal order was vacated, and Petitioner was served with a Notice to Appear initiating removal proceedings before an Immigration Judge. (Exhibit C: Notice to Appear).

25. On June 10, 2025, Petitioner applied for relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture. (Exhibit B: Form I-589). On August 15, 2025, the Immigration Judge ordered Petitioner removed, granting withholding of removal but denying asylum. (Exhibit D: IJ Order).

26. On April 1, 2026, Petitioner filed a motion for bond redetermination, attaching as evidence his order of removal, birth certificate, and affidavit of sponsorship. (Exhibit E: Bond Redetermination Request). On April 7, 2026, the Immigration Judge denied bond for lack of jurisdiction, citing 8 C.F.R. § 1236.1(d)(1). (Exhibit F: IJ Bond Decision).

27. Petitioner is currently detained at the Jackson Parish Correctional Center in Jonesboro, Louisiana. (Exhibit G: ICE Detainee Locator).

## LEGAL FRAMEWORK

**A. Petitioner's removal proceedings have concluded with a grant of withholding of removal and the 90 day removal period to a third country has expired entitling him to consideration for supervised release under the statute and regulations.**

28. Even where there is an order of removal, the Attorney General may only detain an alien during the "removal period." 8 U.S.C. § 1231(a)(1)(A). The Department of Homeland Security has a statutory duty to effect removal within the removal period, if possible. *Xi v. United States I.N.S.*, 298 F.3d 832, 840 n. 6 (9th Cir.2002); *Ulysse v. Dep't of Homeland Sec.,* 291 F.Supp.2d 1318, 1324 (M.D.Fla. 2003). The removal period begins on the latest of the following: (i) the date the order of removal becomes administratively final; (ii) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under the removal process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). The 90–day removal period does not begin when a noncitizen is detained, but when the final order of removal is entered. *Ulysse v. Dep't of Homeland Sec.*, 291 F. Supp. 2d 1318, 1325 (M.D. Fla. 2003). [ICE's unexplained delay beyond the 90-day removal period does not suspend the removal period, pursuant to 8 U.S.C. § 1231(a)(1)(C)]. *Ulysse v. Dep't of Homeland Sec.*, 291 F. Supp. 2d 1318, 1326 (M.D. Fla. 2003).

29. 8 C.F.R. §1003.38(b) provided Petitioner 30 calendar days after the stating of an immigration judge's oral decision to file a Notice of Appeal from a Decision of an Immigration Judge. Petitioner did not file a notice of appeal within 30 calendar days and

8

the order is administratively final. 8 U.S.C. § 1101(a)(47)(A); 8 C.F.R. § 1241.1(c).

30. After the 90-day removal period has expired, if the noncitizen has not been removed, they "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); INA § 241(a)(3).

31. The implementing regulations provide that, before recommending or granting release, a determination must be made that travel documents are not available or that immediate removal, while otherwise proper, is not practicable or not in the public interest. The regulations further require a finding that the detainee is nonviolent and likely to remain so if released, is not likely to pose a threat to the community, is not likely to violate the conditions of release, and does not pose a significant flight risk. 8 C.F.R. § 241.4(e).

32. In addition, the regulations identify factors to be considered in determining whether continued detention or release is appropriate. These include:

> (1) the nature and number of disciplinary infractions or incident reports while incarcerated or in immigration custody; (2) the detainee's criminal history, including the nature and severity of convictions, sentences imposed, time served, probation or parole history, and evidence of recidivism; (3) any available psychiatric or psychological evaluations; (4) evidence of rehabilitation; (5) favorable equities, such as family ties in the United States; (6) prior immigration violations; (7) the likelihood of flight or absconding; and (8) any other probative information bearing on whether the detainee is likely to adjust to life in the community, engage in future acts of violence or criminal activity, pose a danger to self or others, or violate conditions of release. 8 C.F.R. § 241.4(f).

33. Here, Petitioner is entitled to consideration for supervised release under the applicable regulations because he was granted withholding of removal nearly eight months ago. The bond hearing he received was not conducted pursuant to the regulatory framework set forth in 8 C.F.R. § 241.4, which governs post–removal-period custody determinations and requires an individualized assessment of danger and flight risk. See *Johnson v. Arteaga-*

9

*Martinez*, 142 S. Ct. 1827, 1833 (2022). Instead, the Immigration Judge found a lack of jurisdiction for the discretionary release procedures in 8 C.F.R. § 1236(d)(1).

34. The Immigration Judge's bond redetermination hearing failed to satisfy the statutory and regulatory safeguards owed to Petitioner.

35. Petitioner is eligible for supervised release under current laws and should be released immediately.

**B. Petitioner's Prolonged Detention Violates the Fifth Amendment.**

36. Due process may require the government to provide bond hearings to noncitizens facing prolonged detention. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "The Due Process Clause foresees eligibility for bail as part of due process" because "[b]ail is basic to our system of law." *Jennings v. Rodriguez*, 138 S. Ct. 830, 862 (2018) (Breyer, J., dissenting) (internal quotation marks omitted). While the Supreme Court upheld the mandatory detention of a noncitizen related to the commission of crimes under 8 U.S.C. § 1226(c) in *Demore v. Kim*, it did so based on the petitioner's concession of deportability and the Court's understanding at the time that detentions are typically "brief." 538 U.S. 510, 522 n.6, 528 (2003).

37. Where a noncitizen has been detained for a prolonged period or *is pursuing a substantial defense to removal or claim to relief, due process requires an individualized determination that such a significant deprivation of liberty is warranted*. *Id*. at 532 (Kennedy, J., concurring) ("[I]ndividualized determination as to his risk of flight and dangerousness" may be warranted "if the continued detention became unreasonable or unjustified") (emphasis added); *see also Jackson v. Indiana*, 406 U.S. 715, 733 (1972) (holding that detention beyond the "initial commitment" requires additional safeguards);

*McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249-50 (1972) (holding that "lesser safeguards may be appropriate" for "short-term confinement"); *Hutto v. Finney*, 437 U.S. 678, 685-86 (1978) (holding that, in the Eighth Amendment context, "the length of confinement cannot be ignored in deciding whether [a] confinement meets constitutional standards"); *Reid v. Donelan*, 17 F.4th 1, 7 (1st Cir. 2021) (holding that "the Due Process Clause imposes some form of reasonableness limitation upon the duration of detention" under section 1226(c)) (internal quotation marks omitted).

38. The Fifth Circuit recognizes that detention without a bond hearing may be unconstitutional when it exceeds six months. *See Andrade v. Gonzales*, 459 F.3d 538, 543–44 (5th Cir. 2006); *Demore*, 538 U.S. at 529-30 (upholding only "brief" detentions under Section 1226(c),[1] which last "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the [noncitizen] chooses to appeal"); *Zadvydas*, 533 U.S. at 701 ("Congress previously doubted the constitutionality of detention for more than six months."); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1091 (9th Cir. 2022) ("[O]nce the [noncitizen] has been detained for approximately six months, continuing detention becomes prolonged" (cleaned up) (quoting *Diouf v. Napolitano*, 634 F.3d 1081, 1091 (9th Cir. 2011))).

39. The recognition that six months is a substantial period of confinement—and is the time after which additional process is required to support continued incarceration—is deeply rooted in our legal tradition. With few exceptions, "in the late 18th century in America crimes triable without a jury were for the most part punishable by no more than a six-month

---

[1] It is important to note that *Demore* is not directly applicable to Petitioner's case, because the petitioner in *Demore* was a Legal Permanent Resident who had been detained after suffering a burglary conviction. Petitioner has no criminal history. Counsel merely offer's this discussion as a demonstration that Courts have found that the Executive does not have the unfettered ability to toss people into custody and throw away the key.

prison term." *Duncan v. Louisiana*, 391 U.S. 145, 161 & n.34 (1968). Consistent with this tradition, the Supreme Court has found six months to be the limit of confinement for a criminal offense that a federal court may impose without the protection afforded by jury trial. *Cheff v. Schnackenberg*, 384 U.S. 373, 380 (1966) (plurality opinion). The Court has also looked to six months as a benchmark in other contexts involving civil detention. *See McNeil v. Dir., Patuxent Inst.*, 407 U.S. 245, 249, 250-52 (1972) (recognizing six months as an outer limit for confinement without individualized inquiry for civil commitment). The Court has likewise recognized the need for bright line constitutional rules in other areas of law. *See Maryland v. Shatzer*, 559 U.S. 98, 110 (2010) (holding that 14 days must elapse following invocation of Miranda rights before re-interrogation is permitted); *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 55-56 (1991) (holding that a probable cause hearing must take place within 48 hours of warrantless arrest).

**C.  Petitioner's Detention Without a Bond Hearing Violates the INA and Fifth Amendment.**

56. In *Trejo v. Warden of ERO El Paso E. Montana*, 807 F. Supp. 3d 697 at 701-703 (W.D. Tex. 2025), an El Salvadoran noncitizen filed a petition for writ of habeas corpus challenging the legality of continued detention by Immigration and Customs Enforcement without bond, in violation of Immigration and Nationality Act and procedural due process, after he had been granted deferral of removal under Convention Against Torture and released pursuant to an order of supervision for more than six years.

57. The District Court held that Petitioner's procedural due process rights were violated when he was re-detained after having been previously released upon a grant of withholding of removal and held in detention beyond the 90-day removal period without an individualized review. *Trejo*, 807 F. Supp. 3d 697 at 712.

58. Here, Petitioner's detention, without any individualized review, is unreasonable under the *Mathews v. Eldridge,* 424 U.S. 319 (1976) due process test.

59. Each year, thousands of noncitizens are incarcerated for lengthy periods pending the resolution of their removal proceedings. *See Jennings*, 138 S. Ct. at 860 (Breyer, J., dissenting) (observing that class members, numbering in the thousands, had been detained "on average one year" and some had been detained for several years). For noncitizens who have some criminal history, their immigration detention often dwarfs the time spent in criminal custody, if any. *Id.* ("between one-half and two-thirds of the class served [criminal] sentences less than six months").

60. Petitioner faces severe hardships while detained by ICE. Petitioner is held in a locked down facility, with limited freedom of movement and access to Petitioner's family or support network: "[T]he circumstances of their detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting); *accord Chavez–Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 478 (3d Cir. 2015); *Ngo v. INS*, 192 F.3d 390, 397-98 (3d Cir. 1999); *Sopo v. U.S. Att'y Gen.*, 825 F.3d 1199, 1218, 1221 (11th Cir. 2016). "And in some cases, the conditions of their confinement are inappropriately poor" including, for example, "invasive procedures, substandard care, and mistreatment, e.g., indiscriminate strip searches, long waits for medical care and hygiene products, and, in the case of one detainee, a multiday lock down for sharing a cup of coffee with another detainee." *Jennings*, 138 S. Ct. at 861 (Breyer, J., dissenting) (citing Press Release, Off. of Inspector Gen., Dept. of Homeland Sec., DHS OIG Inspection Cites Concerns With Detainee Treatment and Care at ICE Detention Facilities (Dec. 14, 2017)); *see also* Tom Dreisbach, Government's own experts found 'barbaric' and 'negligent'

13

conditions in ICE detention, NPR (Aug. 16, 2023, 5:01 AM) (reporting on the "'negligent' medical care (including mental health care), 'unsafe and filthy' conditions, racist abuse of detainees, inappropriate pepper-spraying of mentally ill detainees and other problems that, in some cases, contributed to detainee deaths" contained in inspection reports prepared by experts from the Department of Homeland Security's Office for Civil Rights and Civil Liberties after examining detention facilities between 2017 and 2019). Individuals at Golden State Annex Detention Facility have described receiving food contaminated with insects (including cockroaches, flies, and spiders), hair, and other foreign objects. See California Collaborative for Immigrant Justice, Starving for Justice: The Denial of Proper Nutrition in Immigration Detention, at p. 7 (April 2022), available at https://www.ccijustice.org/_files/ugd/733055_c43b1cbbdda341b894045940622a6dc3.pdf . At Mesa Verde Detention Facility, over 80% of detained individuals who responded to one survey said they had received expired food. *Id.*

61. The *Mathews* test for procedural due process claims balances: (1) the private interest threatened by governmental action; (2) the risk of erroneous deprivation of such interest and the value of additional or substitute safeguards; and (3) the government interest. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Here, each factor weighs in Petitioner's favor, requiring this Court to promptly hold a hearing to evaluate whether the government can justify Petitioner's ongoing detention.

62. First, Petitioner indisputably has a weighty interest in his liberty, the core private interest at stake here. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment. . . lies at the heart of the liberty [the Due Process Clause] protects."). Petitioner, who is being held in incarceration-like conditions, has an overwhelming interest, regardless of the length of

14

Petitioner's immigration detention, because his fundamental rights are implicated.

63. Second, Petitioner will suffer the erroneous risk of deprivation of his liberty without an individualized review. The risk of erroneous deprivation of their liberty is high, as Petitioner has been detained without any evaluation of whether the government can justify detention under Petitioner's individualized circumstances. "[T]he risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decision maker is substantial." *Diouf v. Napolitano,* 634 F.3d 1081, 1092 (9th Cir. 2011)).

64. Third, the government's interest is very low in continuing to detain Petitioner without providing any neutral review. *See Mathews*, 424 U.S. at 335. The specific interest at stake here is not the government's ability to continue to detain Petitioner, but rather the government's ability to continue to detain him for months on end without any individualized review. The cost of providing an individualized inquiry is minimal.

65. In sum, the *Mathews* factors establish that Petitioner is entitled to an evidentiary hearing before a neutral adjudicator.

## D. Petitioner's Continued Detention is Unreasonable By Any Standard Applied by the Court.

66. Courts that apply a reasonableness test have considered four non-exhaustive factors in determining whether detention is reasonable. *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210-22 (3d Cir. 2020). The reasonableness inquiry is "highly fact-specific." *Id.* at 210. "The most important factor is the duration of detention." *Id.* at 211. Duration is evaluated along with "all the other circumstances," including (1) whether detention is likely to continue, (2) reasons for the delay, and (3) whether the conditions of confinement are meaningfully different from criminal punishment. *Id.* at 211.

67. In conducting the case-by-case evaluation, a court should consider, among other things: (1)

the amount of time the alien has been in detention without a bond hearing; (2) the cause of the protracted removal proceedings(i.e., whether the petitioner or the government has improperly delayed the proceedings); (3) whether it will be possible to remove the alien upon the issuance of a final order of removal; (4) whether the period of civil immigration detention exceeds the time the alien spent in prison for the crime that rendered the alien removable; (5) whether the facility at which the alien is civilly detained is meaningfully different from a penal institution; and (6) the likelihood that the removal proceedings will conclude in the near future. *Sopo*, 825 F.3d at 1217–18.

68. Regarding the first factor—the length of detention—the Eleventh Circuit noted that § 1226(c) detention without a bond hearing is likely reasonable for up to six months but "may often become unreasonable by the one-year mark, depending on the facts of the case." *Id.* at 1218. Critically, the Eleventh Circuit explained in the context of prolonged § 1226(c) detention, procedural due process does not require automatic release of a criminal alien once the detention is unreasonably prolonged but, instead, requires the government to afford the alien an individualized bond inquiry. *Id.*

69. Petitioner's case meets each of the identified reasonableness factors for evaluating prolonged detention.

70. First, Petitioner has been detained for 8 months since his grant of withholding of removal without the individualized review in the statutes and regulations.

71. Second, the protracted nature of removing Petitioner to a third country is not due to any lack of diligence on the part of Petitioner, but rather to the Government who have failed to remove him.

72. Third, Petitioner can be removed pursuant to withholding of removal but the Government

has failed to do so indicating that it may not be reasonably foreseeable.

73. Fourth, Petitioner is held in civil immigration detention for a violation of the Immigration and Nationality Act, not for a criminal offense, and the duration of his detention far exceeds any sentence he could have received for an illegal entry violation. *See* 8 U.S.C. § 1325(a) [Illegal entry is punishable by fine under title 18 or imprisonment for not more than 6 months, or both].

74. Fifth, the facility at which the alien is civilly detained is not meaningfully different from a penal institution.

75. Finally, it is unforeseeable when he will be removed because the Government has not provided any information describing their efforts.

## CLAIMS FOR RELIEF

### COUNT I

**Prolonged Detention Violation of Due Process**

76. Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

77. The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

78. Petitioner has been detained for 8 months, and his removal is not reasonably foreseeable because the Government has failed to remove him to a third country.

79. Petitioner has a fundamental interest in liberty and being free from official restraint

under the statutes and regulations.

## COUNT II

**Violation of the INA and of the Administrative Procedure Act – 5 U.S.C. § 706(2)(A)**

80. Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

81. Under the APA, a court "shall . . . hold unlawful . . . agency action" that is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law"; "contrary to constitutional right"; "in excess of statutory jurisdiction, authority, or limitations"; or "without observance of procedure required by law". 5 U.S.C. § 706(2)(A)-(D).

82. An action is an abuse of discretion if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife,* 551 U.S. 663, 658 (2007) (*quoting Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).

83. Petitioner has been detained for 8 months without a review for supervised release pursuant to 8 U.S.C. § 1231(a)(2)(C) and 8 C.F.R. § 241.4.

### PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

    a. Assume jurisdiction over this matter;

    b. Issue a writ of habeas corpus requiring that Respondents release Petitioner from custody immediately, with any terms or instructions as deemed

necessary by this Court, or, in the alternative, provide notice and a bond hearing on the merits with instructionsbefore an immigration judge for Petitioner;

c.  Enjoin Respondents from transferring the Petitioner from the jurisdiction of this District pending these proceedings;

d.  Enjoin Respondents from continuing his removal proceedings case on his asylum application until either his release or until a bond hearing is scheduled;

e.  Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

f.  Grant any other and further relief that this Court deems just and proper.

Dated: April 17, 2026                    Respectfully submitted,

*/s/ Al Page*
Allyson "Al" Page
Louisiana Bar No. 35949
Immigration Services and Legal Advocacy
3801 Canal St., STE 400
New Orleans, LA 70119
Phone: (504) 265-0416
Email: apage@islaimmigration.org

## 28 U.S.C. § 2242 VERIFICATION STATEMENT

I am submitting this verification on behalf of the Petitioner because I am the Petitioner's attorney. I have independently confirmed the events described in this Petition. On the basis of those discussions, and my own investigation, I hereby verify that the statements made in this Petition are true and correct to the best of my knowledge.

/s/ Al Page
Allyson "Al" Page
Louisiana Bar No. 35949
*Attorney for Petitioner*